J-S77007-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEPHEN WILSON | |
| Appellant | No. 2593 EDA 2013 |

Appeal from the Judgment of Sentence Entered February 8, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014270-2009 and CP-51-CR-0015266-2009

BEFORE:  STABILE, JENKINS, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                    **FILED MARCH 17, 2015**

Appellant, Stephen Wilson, appeals from the February 8, 2013 judgment of sentence imposing an aggregate eight to sixteen years of incarceration followed by five years of probation for his sexual assaults of two young men, one of whom was Appellant's cousin and a minor at the time of the offense.  On appeal, Appellant argues the trial court erred in denying his motions to dismiss the consolidated prosecutions pursuant to Pa.R.Crim.P. 600.  After careful review, we affirm.

Appellant's sexual assault of his cousin, L.S., took place on December 5, 2008.  Appellant got L.S. drunk in a hotel room and forced him to perform

_____

[*] Retired Senior Judge assigned to the Superior Court.

fellatio on Appellant.   Appellant then had anal sex with L.S. without L.S.'s consent.

Appellant met the second victim, B.P., in an internet chat room, then traveled to B.P.'s apartment on September 15, 2009 to meet him in person. Appellant and B.P. remained together in B.P.'s apartment into the early morning hours of September 16, 2009.   The two got into an argument, during which Appellant drew a knife.   Appellant used the knife to cut B.P. on his face, abdomen, shoulders and back.   Subsequently, Appellant had anal sex with B.P. without B.P.'s consent.   After the sex, Appellant choked B.P. until he blacked out.   B.P. regained consciousness to find Appellant having anal sex with him for a second time.   Police apprehended Appellant on September 16, 2009 in connection with his offenses against B.P.

The prosecutions pertaining to Appellant's offenses against these two victims were consolidated for a June 15, 2012 bench trial.   At the conclusion of trial, the judge found Appellant guilty of aggravated assault, possession of an instrument of crime, indecent assault by forcible compulsion, simple assault, recklessly endangering another person and sexual assault against B.P.[1]   The court also found Appellant guilty of unlawful contact with a minor, sexual assault, endangering the welfare of children, corruption of minors,

_____

[1]   18 Pa.C.S.A. §§ 2702, 907(a), 3126(a)(2), 2701(a), 2705, and 3124.1 respectively.

and indecent assault by forcible compulsion against his cousin.[2] On February 8, 2013, the trial court imposed sentence as set forth above. The trial court also determined Appellant to be a sexually violent predator. This timely appeal followed.

Appellant argues the trial court erred in denying his Pa.R.Crim.P. 600 motions to dismiss for both prosecutions.[3] We review the trial court's decision for abuse of discretion. ***Commonwealth v. Sloan***, 67 A.3d 1249, 1251 (Pa. Super. 2013) (citing ***Commonwealth v. Hunt***, 858 A.2d 1234, 1238 (Pa. Super. 2004) (*en banc*)). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will … discretion is abused." ***Commonwealth v. Bradford***, 46 A.3d 693, 700 (Pa. 2012). "Our scope of review is limited to the record evidence from the Rule 600 hearing and the findings of the lower court, viewed in the light most favorable to the prevailing party." ***Id.***

> We have explained that Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution of criminal

---

[2] 18 Pa.C.S.A. §§ 6318(a)(1), 3124.1, 4304(a)(1), 6301(a)(1), and 3126(a)(2), respectively.

[3] A revised version of Rule 600 took effect on July 1, 2013. We will consider the prior version, as that version was applicable when Appellant filed his Rule 600 motions.

cases. To protect the defendant's speedy trial rights, Rule 600 ultimately provides for the dismissal of charges if the Commonwealth fails to bring the defendant to trial within 365 days of the filing of the complaint (the 'mechanical run date'), subject to certain exclusions for delays attributable to the defendant. Conversely, to protect society's right to effective prosecution prior to dismissal of charges, Rule 600 requires the court to consider whether the Commonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control. If the Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control, the motion to dismiss shall be denied. The Commonwealth, however, has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. As has been oft stated, [d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

*Id.* at 701-02 (citations and quotation marks omitted).

We begin with a procedural history in the L.S. matter. The docket reveals the Commonwealth filed its complaint against Appellant on January 14, 2009, or 1,248 days[4] before trial commenced on June 15, 2012. As of that date, Appellant's whereabouts were unknown. Police apprehended him on September 16, 2009, the day of Appellant's offenses against B.P. The trial court found the 245 days between the complaint and arrest excludable because the Commonwealth exercised due diligence in apprehending

_____

[4] Appellant filed several motions for dismissal under then-effective Rule 600(G) throughout the proceedings. He also filed a post-sentence motion arguing the trial court erred in denying his pre-trial Rule 600 motions.

Appellant. The original trial date was July 27, 2010, within one year of Appellant's apprehension. At a June 7, 2010 hearing on one of Appellant's Rule 600 motions, however, defense counsel indicated he would be on vacation on that date and was unable to procure another member of the Philadelphia Public Defender's office to handle the trial. The trial court therefore removed the Public Defender's office as counsel and appointed new counsel. New counsel was unable to prepare in time for the July 27, 2010 trial and therefore requested a continuance. The court scheduled trial for the next available date, which was March 15, 2011, and noted that the resulting delay was excludable.[5]

The March 15, 2011 proceeding turned out to be a scheduling conference rather than a trial date, because the case was transferred from one trial judge to another pursuant to the ongoing reorganization of the Philadelphia County Court of Common Pleas Criminal Division. At the March 15, 2011 conference, Judge William J. Mazzola set trial for July 7, 2011. On July, 7, 2011, however, defense counsel withdrew. The trial court appointed new counsel on September 13, 2011, and set trial for the next available date, which was March 5, 2012. Trial was continued once again on March 5, 2012, because Judge Mazzola was hearing a trial in another case. On April

---

[5] We are sympathetic with Appellant's frustration at the delay resulting from defense counsel's vacation plans. For purposes of Rule 600, however, we must focus on the diligence of the Commonwealth, not that of defense counsel.

13, 2012, the next scheduled trial date, Judge Mazzola was once again involved in another trial, as was the prosecutor assigned to this matter. The trial court attributed these two delays to court congestion. The next scheduled trial date was June 15, 2012, at which time the trial took place.

In summary, the trial court attributed the entirety of the delay between the original July 27, 2010 trial date and the June 12, 2012 trial to defense or to court congestion. This 689-day period added to the 245 days in between the complaint and Appellant's arrest accounts for 934 days of delay not attributable to the prosecution. Subtracting those 934 days from the 1,248 days between the complaint and trial leaves a difference of 314 days. The trial court therefore found no violation of former Rule 600(A)(3).[6]

Appellant first argues the trial court erred in finding the Commonwealth acted with due diligence in apprehending Appellant. Former Rule 600(C)(1) provides:

> In determining the period for commencement of trial, there shall be excluded therefrom […] the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence.

Pa.R.Crim.P. 600(C)(1), *repealed*.

_____

[6] Former Rule 600(A)(3) required trial in this matter to commence within 365 days of the complaint, less any excludable time. **See** Pa.R.Crim.P. 600(A)(3) (rescinded October 1, 2012, effective July 1, 2013).

Appellant fails to cite any legal authority governing the Commonwealth's obligation to exercise diligence in locating and apprehending a defendant. We could deem Appellant's argument waived on that basis. **See** Pa.R.A.P. 2119(b). We decline to do so, however, and our analysis reveals Appellant's argument to be lacking in merit.

As noted above, the Commonwealth bore the burden of proving its diligence by a preponderance of the evidence. **Bradford**, 46 A.3d at 702. Concerning the Commonwealth's burden of proving diligence in apprehending a defendant, we have explained:

> It seems clear that the test is not a venture into hindsight reasoning as to whether, if certain individuals had been contacted, on [sic] other things done, an arrest would probably have been made. The matter of availability and due diligence must be judged by what was done by the authorities rather than what was not done. The standard of due diligence demands only reasonable efforts.

**Commonwealth v. Faison**, 471 A.2d 902, 903 (Pa. Super. 1984).

For example, in **Commonwealth v. Ingram**, 591 A.2d 734, 737 (Pa. Super. 1991), *appeal denied*, 606 A.2d 901 (1992), police attempted to execute the arrest warrant at the defendant's last known address, posted a wanted message in the Philadelphia Crime Information Center ("PCIC"), and maintained surveillance on neighborhoods where they had seen the defendant in the past. This Court deemed those efforts sufficient. **Id.** at 737-38. Similarly, in **Commonwealth v. Newman**, 555 A.2d 151 (Pa. Super. 1989), *appeal denied*, 655 A.2d 512 (Pa. 1995), this Court found

police exercised sufficient diligence where they posted wanted messages in the PCIC and National Crime Information Center ("NCIC"), maintained contact with the defendant's mother and the victim, and provided other police departments with wanted posters with the defendant's name and likeness on them. *Id.* at 155. Police also discovered a bench warrant for the defendant in New York City, where local police eventually apprehended him. *Id.*

In *Commonwealth v. Gratkowski*, 430 A.2d 998 (Pa. Super. 1981), police checked the defendant's last known address, maintained contact with employees at the defendant's most recent place of business, and checked with other police departments. *Id.* at 1000. The defendant argued police could have searched for the defendant using records of the Department of Motor Vehicles, Bureau of Employment Security, or his bank account. *Id.* We concluded the Commonwealth established due diligence by a preponderance of the evidence:

> It is not the function of our courts to second-guess the methods used by police to locate accused persons. The analysis to be employed is whether, considering the information available to the police, they have acted with diligence in attempting to locate the accused. Deference must be afforded the police officer's judgment as to which avenues of approach will be fruitful.

*Id.* Due diligence requires only reasonable efforts, not the exhaustion of every potential method of locating a defendant. *Id.* at 1001.

Here, the Commonwealth produced the testimony of Detective Joseph Jenkins. Detective Jenkins testified he conducted a check of police records and learned Appellant was wanted for a probation violation in Philadelphia. N.T. Hearing, 6/7/10, at 13. The records search also revealed an address for Appellant in Chester County. *Id.* at 14. A search of the Bureau of Motor Vehicle records revealed no record of Appellant having a driver's license. *Id.* at 15, 22. Detective Jenkins entered Appellant's arrest warrant into the PCIC and NCIC databases. *Id.* at 17. Detective Jenkins also obtained the address of Appellant's mother in Chester County from L.S. *Id.* at 18. Detective Jenkins alerted five police stations in Chester County of the outstanding arrest warrant for Appellant. *Id.* at 19-20, 23. Detective Jenkins also enlisted the aid of the United States Marshalls. *Id.* at 25-26. Finally, Detective Jenkins maintained contact with the victim's family. *Id.* at 26.

Appellant faults Detective Jenkins for failing to visit either of the Chester County addresses, for failing to contact Appellant's mother, and for failing to check for records with utility companies and state and federal taxing authorities. Appellant's Brief at 18. Appellant also faults Detective Jenkins for insufficient follow up with the Chester County police.

Based on the record and the applicable law, we conclude the trial court acted within its discretion in finding the Commonwealth proved by a preponderance of the evidence that it exercised diligence in apprehending

Appellant. The evidence, read in a light most favorable to the Commonwealth pursuant to our standard of review, plainly evinces a diligent search for Appellant. *Bradford*, 46 A.3d at 70. Detective Jenkins's search was at least as diligent as the sufficiently diligent searches described in our opinions in *Ingram*, *Newman,* and *Gratkowski*. The law affords police officers such as Detective Jenkins discretion to determine which avenues of discretion will be fruitful. Detective Jenkins was under no obligation to visit the Chester County addresses if he did not believe he would find Appellant there. Moreover, the Chester County addresses are outside of Detective Jenkins' jurisdiction. Similarly, Detective Jenkins was not required to search tax and utility records. Appellant offers no explanation as to how those searches would have helped locate Appellant. In summary, Appellant would have us force the Commonwealth to exhaust every conceivable means of locating Appellant, but applicable case law holds that an exhaustive search is unnecessary.

Appellant is willing, with minor exceptions, to assume "*arguendo*" that the remainder of the delay attributable to the defense and to court congestion is excludable. Appellant's Brief at 22. He argues only that the delay attributable to the continuances on March 5, 2012 and April 13, 2012 are chargeable to the Commonwealth because the Commonwealth was not prepared for trial on those dates. The record, summarized above, fails to support Appellant's argument, inasmuch as Judge Mazzola was unavailable

on both of those dates. N.T. Hearing, 8/8/13, at 12-13. Judicial delay, as was the case here, is not attributable to the Commonwealth. ***Commonwealth v. Trippett***, 932 A.2d 188, 198 (Pa. Super. 2007).

Concerning the B.P. prosecution, Appellant offers only several paragraphs of argument unsupported by legal authority in his Brief. Appellant's Brief at 23-24. This deficiency is of no moment, as the procedural history pertaining to the defense and judicial delay is precisely the same in both cases. The trial court consolidated the L.S. and B.P. matters by order of March 5, 2012. Prior to that order, however, the cases were consistently listed together and the same attorney represented Appellant in both cases. The only distinction between the two cases is that our analysis of the delay between the date of the L.S. complaint and Appellant's eventual arrest is not pertinent, as the B.P. prosecution began with Appellant's arrest and the concomitant complaint filed the same day Appellant completed his assault of B.P. As such, the trial court acted within its discretion in denying Appellant's Rule 600 motion in the B.P. prosecution.

For all of the foregoing reasons, we reject Appellant's arguments on appeal and affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/17/2015